Services Group, et al., Defendant's Affiliate, arguing on behalf of the plaintiff's Affiliate's Chicago Tribal Trust, Mr. David E. Schroeder. Just to clarify, by stipulation, the affiliates are agreeing to divide the time, is that correct? Ten minutes for Mr. Schroeder. I'll leave this five minutes for Mr. Schroeder. There was also a motion that was filed by the affiliates to strike portions of the plaintiff's brief. Counsel, we will take that motion, we acknowledge it, we've received it and reviewed it, and we'll rule on that in the course of our disposition. All right, thank you. And with those thoughts in mind, Mr. Thack, you may proceed. Good morning, Your Honors. Jeffrey Thack on behalf of the plaintiff's appellant. May it please the Court. Greg Mlynarczyk was injured on June 15 of 2015 when he slipped and fell on a sidewalk that was owned by Chicago Tribal Trust as a trustee. Can you explain to me, was it ever explained how the plaintiff injured his knee on a slip and fall? Yeah. He fell forward on a slip? Absolutely. That's kind of unusual. Usually people, when they slip and fall, they go... I would tend to agree. I've seen tailboard injuries, elbow injuries, shoulder injuries. This is the first kneecap injury I've seen from a slip and fall case. As have I, Judge. And we really agree. It is. That's laid out in Greg Mlynarczyk's deposition. He testified that he hit that stuff. That's the way he fell. He fell forward, not backward. He probably stumbled and tried to right himself. Yeah. As a non-moving party, all reasonable inferences are to be accorded to the plaintiff, of course. But can you tell us how it's reasonable to infer that the slippery, quote, oily, quote, hydrocarbon, quote, brown grit substance came from Archer Window Cleaning, including a solution of water and a few drops of either Dawn or Palmolive fish soap? How is that a reasonable inference? The reasonable inference that can be drawn from that is two things. It's clear from the record that there is nobody that touched that window other than Archer Window Cleanings from May 1, 2015 up until the date of my client's call. Well, no one that saw anybody. No, I disagree, Judge. With all due respect. The maintenance guys all testified that there was no other work that was done on those premises. Nobody power-washed the bricks. I understand that. I'm asking how it's reasonable to infer that that substance that your expert described as slippery, oily, hydrocarbon, brown with grit substance came from a solution of Dawn dish soap or Palmolive and water. My expert testified that in his opinion that that substance that was used in the windows must have been contaminated with something. And that's what Ralph Schmidt testified to. And I understand that the window cleaner who said I put three drops of the Dawn liquid into, how is that going to clean the windows in the first place? That I don't understand. I think the substance that was in that bucket is very suspect. I think there is some inference or more than a mere scintilla in the record that you can infer that that stuff came from Archer Window Cleaners. And the way you can do that, again, nobody else touched that window from the time of Archer was out there until my guy fell. The stuff that's on and shown in the photographs is only in front of the windows. You can see that. And Schmidt testified to that too. Schmidt's testimony was rejected by the trial court, correct? Absolutely. And you offer no transcript. There's no transcript in the record of the hearing. No. I mean, it wasn't my motion. It's not my duty and it's not my burden to have a court reporter there. There was no transcript. As the appellant, arguing that the trial court's ruling was an error in striking Schmidt's testimony, how can we, as a reviewing court, review the trial court's finding without a transcript? You have it to know, Bob. The reasons for the trial court, the only thing that a transcript of that hearing would add, is not the basis of the trial court striking the testimony, it's only the arguments of the lawyers. What's the standard of review for reviewing a trial court's ruling on the proper testimony of an expert witness? Probably abuse of discretion. Correct. I defer to the court. So you need a transcript. There is no transcript. And, again, it's not our motion. And in the circuit court rules of Lake County, it's not our burden. It wouldn't be your burden, but on appeal it's your burden. Well, how am I going to get a transcript of a hearing that's over a year's record? Bystander. Did you attempt to do a bystander's record? Did I not? I did not. Okay. I did not. I did not. Have you heard of the case of Fouch v. O'Brien? I'm not familiar with that charge, no. It's an Illinois Supreme Court case, 99 Illinois 2nd 399. What it holds is that in the absence of a record on appeal, it's presumed that the order that the trial court entered on the matter was in conformity with the law and had a sufficient factual basis, which means that we have to resolve this in favor of the record, absent something to the contrary, just so you know that for future reference. I understand that, Your Honor. And I'm aware of that general aspect of the law. I just wasn't aware of that particular appeal. Okay. Fair enough. I understand that. But with regard to that, if you look at the basis, if you look at Schmitt's testimony and compare it with the testimony that was admitted in the Caldwell v. Advocate case, which this court decided about eight months ago in 2017, I put it to you, Your Honors, that Schmitt's opinions and that were in front of Judge Winter were every bit as specific and more specific than the experts were on Advocate. But didn't you just a few minutes ago, when Justice Burkett was asking a question, said that your experts speculated that there had to be something else in that cleaning solution? My expert never used the word speculation. Okay. Whatever you want to call it. He didn't speculate. And I don't think I did either, Your Honor, but he opined it. He rendered the opinion. Okay. We'll approach it that way then. What was that opinion based on? It was based on his review of the scene. It was based upon his review of all of the deposition testimony that was presented in the record. It was based on his review of the photographs taken by my client on the day of the incident. All of those things. And his education and experience. Well, let me just ask you some poignant questions. And, obviously, you're right. In the summary judgment motion, all doubts have to be resolved in favor of the other side. But you're talking about a situation, the only testimony of Sanchez, the window washer, the manager of the business, everybody they were using this solution of dishwasher liquid and water, essentially. That's what they testified to. If it got to be a trial, then, you know, credibility becomes an issue. So they testified as to that. And I think what Justice Jorgenson's point is, is hydrocarbon-based, how do we know that somebody else didn't spill something on there? There's no evidence to rebut the testimony that it was dishwasher liquid right in water. I understood. So whether to call it speculation or not, we're wondering where is that coming from? Again, the reasonable inference is drawn from the evidence. It's only in front of those windows. It's evident from the photographs that my client took on the date of the incident. And you've got Schmidt's opinion that says, I think it came from the window washer. But, see, that's the missing link here. I can see the point. Couldn't it be in truth and reality that the dishwasher, the window washer, did what he said he was going to do, his solution was what he said it was, and something else could have come along? How do we know this came from the dishwasher, the window washing service, without sort of filling in the gaps here in the evidence? Again, we're here on summary judgment. We're not here on the directed finding. We're not here after trial. And when we're talking about summary judgment, a court can draw inferences from undisputed facts, but it should only grant the most of a summary judgment unless those facts are susceptible of only a single inference. And if the facts permit more than one conclusion or inference, including one unfavorable to the moving party, summary judgment should be denied. That goes to your point, Judge. What if? I don't know what if. That's up to the trier of fact to find what if. It's not from the trial court. And then we're going to construct the summary. The inferences that run in plaintiff's favor have to be reasonable based upon the facts in the record. Understood. No one else saw any evidence of the substance other than your client and your expert who testified that the substance was slippery, oily, hydrocarbon tight, which you have to acknowledge that is inconsistent with what's in the record. And those three words in his deposition do not help the plaintiff with that. Right. So how can the trial court ignore that part of his testimony and find that his leap, that it came from Archer Windows, is accurate? Because there's more than just that. But there's more rules. The Illinois rules of evidence are what guide a trial court. Would you agree? Absolutely. And the foundation for the expert's testimony has to have a reasonable basis in fact. The trial court doesn't have to agree to it, but it has to have some reasonable basis in fact. When we wrote the Caldwell decision last year, you were faced with a doctor who basically testified that since the lady didn't complain that her teeth were missing in the record, in the medical record, the doctor was able to testify, I think those teeth were in that lady's mouth. Based on that, trial court let that in. Same judge, same plaintiff's attorney, same appellate court bench. Trial court let it in there. In that case, there was no doubt that at some point in time there had been teeth in that mouth. Well, yeah, before she went into surgery. In this case, there is no doubt in the record that the substance that was placed in the water and used on the windows was not an oily-based carbon-like substance. You're mixing apples and oranges or teeth with oil. Okay. As I stated, Judge. It's a coined phrase, by the way. It's a coined phrase. Teeth with oil. I'll remember that. I understand your point, Judge. And slippery, hydrocarbon, oily, yeah, feathers. I concede that. If I might move on to the constructive notice argument with regard to Chicago Title. This court held in the Lake Villa case that we cited in both briefs, I believe, that Russell versus the Villas of Lake Villa. In that particular case, it was a basic pile of snow, freeze-thaw outside a train station in Lake Villa. The only evidence in the record in that Lake Villa case was that the municipality had the train station inspected daily, and he was aware that there was a hazard posed by clouds, snow melting, and refreezing. And this court concluded, given this awareness, and that was the it, that was all of the evidence as to constructive notice in the Lake Villa case. This court said, given this awareness, the plaintiff has presented sufficient evidence to raise a genuine issue of fact as to constructive notice. In this particular case, you have the photographs in front of you that show, that are appended to our brief, Exhibits A1 through A5, that there is something on the ground. At least a reasonable jury can, in fact, see that there is something on the ground. It's open, it's obvious. Is it open and notorious? Is it obvious, notorious? I take the recent opinion in Racky versus Belfort, USA. It's a first district opinion, where they state in the appellate court, for one of the first times I've seen this, is whether a landowner is liable for an open and obvious dangerous condition. Whether a dangerous property condition is open and obvious may present a question of fact, where there's no dispute. Whether the condition is open and obvious is a question of law. With regard to constructive notice, the court found that it's more than just a time period. And I just lost my sight, if I might for a second. Sure. Thank you. And would be recognized by a reasonable person exercising ordinary perception, intelligence, judgment in visiting the area. The point is, it's beyond, in a setting such as this, it goes beyond having a burden to show how long that stuff was there. And that has been the case law. If it's open and obvious that someone who is there every day should have seen it and would have seen it, that's sufficient to show constructive notice. And in this case, the record shows that the property owner had a maintenance guy out there 25 hours per month. He testified in his deposition that he was out there maybe for an hour, maybe for two hours. So 25 hours per month, maybe an hour, maybe two hours. They had a maintenance guy out there for 20 days. His testimony was he never saw anything. He never saw anything. But he should have. But he should have. The testimony of the other people from Chicago Title, NPNC also, that there was no substance on that. Right. And we have the testimony of Gregory Miller, I think, that says there was. Right. And that it came up on my fingers, and I took a picture of it on my fingers, and that's the way it looked on that day. That raises the question, in fact, as to constructive notice. You can also infer from the other photographs in there that shows that bicycle tracks were there. That obviously went through whatever was on the ground there and tracked it around. That is something that's a fact that can be utilized to infer that it had been there for a significant period of time. All of those factors show that at a bare minimum, there's a question of fact as to whether or not C&T Bank, landowner, had constructive notice of this dangerous condition, should have removed it, should have prevented this injury. Thank you. All right. Thank you, Mr. Scott. All right, Mr. Shield, on behalf of Archer Window Company. Good morning, Your Honors. May it please the Court. Gene Shield on behalf of Archer Window Company. What we have here, I know the plaintiff's counsel, or sorry, the appellate's counsel went through and made a lot of comments about how a reasonable inference could be made from whatever substance was found. Well, the issue here is the existence of a material fact cannot be inferred when a contrary fact could be inferred with equal certainty based off the same evidence. All right, so he's saying that his expert believes there was some slippery hydrocarbon-based, quote-unquote, substance, and that doesn't carry the date. Why? Because there's the hypothetical situation that Archer Window Company washed the windows 45 days prior with a soap solution. Absolutely anything could have happened during those 45 days. This is what I asked him. I mean, the scenarios are limitless. Apologies. Go ahead. And so the only limiting factor on what could or could not have happened, it is a public sidewalk. Your imagination is as far as it could go. The jury would be left to completely speculate as to, because there's no factual evidence on what exactly this substance was, how it got there, and how long it had been there. Except for the testimony of the window washing man, Sanchez, the company, and everybody else, that says it was a dishwasher water-based solution. Correct. There's nothing in the record that refutes that, you're saying? There is absolutely nothing in the record that refutes that. And Mr. Schmidt's testimony is inherently contradictory where he goes through, and the trial court probably ruled it was invisible speculation. He did no testing. Well, we'd be speculating on the grounds for the trial court's ruling because we don't have a transcript. That is also true. Fair enough. But even just looking through on DeNovo, going through on the facts that are actually contained in the record, what his testimony is, and what he said, and what he based his opinion off of, is whether or not it's his experience being on the site. He went through, collected no samples, did no testing, did no objective measures on this substance. He found something and rendered the opinion that it was an oily hydrocarbon. If you look at the material, the indisputable facts in this case, Archer Window Company did not use any oily hydrocarbon. There's no link between what Archer did 45 days prior to the plaintiff's fall to how this substance got there. There's no evidence in the record that shows or implicates in any sort of way how that window-washing activity somehow was responsible for an oily hydrocarbon 45 days later. That missing link right there is the fact that is not present. So what you're saying is even if there was, in fact, we're not conceding it, but even if there was, in fact, in reality, a hydrocarbon-based substance on the place where the expert says it was, it doesn't necessarily mean that the Archer Company had anything to do with it. That is exactly what we're saying. That's the exact essence of what we're saying, where there is, excuse me, there is no evidence that goes through and says that, sorry. There's no nexus between that and what the company did. Correct, correct. And then as far as what the substance was when the plaintiff fell, his own testimony, he went through and he admits he is speculating that this somehow may be related to window-washing. His best guess was this may be from the window-washing based solely on the location. He had, there was no identical scent to it, did not see, there was one pedestrian apparently behind him. There was nobody else around. There was no work being performed. There is nothing there at all that goes through. And therefore, there's no evidence from plaintiff's testimony to raise the question of material fact. Regardless of what he speculates it may have been and what these pictures may show, he still does not know what it is, does not know where it came from. And there is simply, the trial court did not err and went through and summary judgment was proper because it is unbounded speculation to go through and have to try to hold a window-washing company 45 days prior that launched this to hold them responsible for it. There's just, there's no facts to support that. And I know counsel made arguments relating to this court's recent decision in Caldwell. That case is factually distinguishable from this one because they're the experts running an opinion regarding the lower deck. Is that what he's talking about, confusing the oil with the teeth, is that the case? Yes, it is that case. In that case, there was medical records and charts of the actual decedent in that one that showed that her lower dentures were never removed. So when the expert rendered the opinion that based off of his review of the medical records and the testimony, there were evidence contained in the record that these teeth... To corroborate that, aside from what the plaintiff said. Yes, correct. And so... Your position is obviously that given those facts, the trial court acting as the gatekeeper was entitled to preclude that expert testimony because it had no foundation of facts. Absolutely, there was no foundations, there was no facts that go through, and this is not something that even gets in to go to the jury because the jury would be left. What could have happened during those 45 days? Anybody could have came along, anybody could have spilled something. Just because it's by the windows right there, it does not make it a necessary condition that it came from a window washing 45 days prior. Somebody could have maybe moments before the plaintiff went through and had this fall. Somebody could have spilled something there and walked away because you sit there and the jury would just guess and guess and guess. Therefore, it's completely speculative. It's based on nothing. It contradicts. All that it does is contradict. It's not supported by anything in the record as far as what anybody at the PNC Bank saw, anybody from Chicago Title and Trust, what anybody from Archer Window Washing did. There is quite simply no evidence that supports this cause of action against Archer Window Washing, and therefore the trial court got this correct, granted summary judgment in their favor, and he should be affirmed on appeal. All right. Thank you, Mr. Schroeder. Thank you. Mr. Schroeder, on behalf of Chicago Title and Trust. May I please court? David Schroeder on behalf of the owner of the property, Chicago Title. I just want to address counsel's argument related to constructive notice. In addition to never informing the lower court or this court exactly what standard is to be applied in this situation, which I think is something that he should have done before both courts, his constructive argument or his constructive notice argument, again, hinges on the source of the substance that the plaintiff slipped on being from Archer Windows. He never moved to amend the complaint to argue or to allege that there was some substance, some substance from some deposit, which he could have done, correct? He could have argued that there was a substance on the sidewalk that Chicago Title should have been aware of, but he never did amend the complaint. He could have, and I think the reason he didn't is because absent the attempt to tie what Archer did to the substance on the sidewalk, there is no evidence whatsoever as to when the actual hydrocarbon-based substance that the plaintiff slipped on arrived on the sidewalk. It's all well and good that the plaintiff took a picture of the sidewalk the day he fell, but that doesn't eliminate the possibility that the substance, whatever it was, was deposited on the sidewalk by someone else five minutes before he got there. What about the bike track? Well, the bike track is on the other side of the building, and I think it's a misleading piece of evidence that was raised by the plaintiff, but again, the argument that he wants to make is that the bike track went through the hydrocarbon substance, which was deposited by Archer, and that the bike track was further evidence that the substance was on the sidewalk for a long time. But again, the expert's argument, his expert's argument, was that that supports my position that the stuff was deposited by Archer, not that it was from another unknown source for an unknown period of time. And the other thing he mentions is the photos. Now, again, I said that even if you give the plaintiff the benefit of the doubt on the photo he took the day of the accident, that just proves that something was there the day of the accident. It does not prove what it was or how long it was there. And if you're going to make a constructive notice argument, you have to have some evidence that the stuff was there and should have been. Long enough for Chicago time to know. Correct, because there's absolutely no evidence that we put it there, first of all, or that we knew about it. All of the testimony from our maintenance guy who went out every day and went over the property and would clean things up, he did not see it. And the other thing, the photo that he showed you, it looks like there are enormous shiny spots on the sidewalk in front of those windows that go almost the length, not along the windows, but away from the windows. Now, our expert, Mr. Bang, who is an expert in concrete, testified that those shiny areas are actually a different finish in the concrete. There's a broom finish and a hard trowel finish. And he went and took pictures the day he went out more than a year after the accident, and those same blocks of concrete look exactly the same from the same angle. The same alleged discoloration he's saying is inherent to the different types of finishes. Correct. It doesn't have to do with anything being spilled on the sidewalk. Correct. And also, if those photos depicted this amazingly slippery hydrocarbon substance covering at least half of three slabs of concrete for 45 days, according to the plaintiff's theory, it is just unbelievable that no one else slipped, commented on it, saw it. No one from the bank, all of the bank employees that were deposed, said they walked up and down that sidewalk at least twice a day, and the sidewalk looked exactly the same. The bank manager said that he'd been there for like five years or more, and the sidewalk looked exactly the same. He walked on it the day of the accident and didn't see anything. It's just incomprehensible that, again, this hydrocarbon substance that the plaintiff alleges that he fell on could have been left by Archer 45 days prior to the plaintiff encountering this slippery substance. Now, what counsel said was his expert said that, and he thinks that the substance in the bucket used by Archer is suspect. There is no evidence whatsoever on this record to indicate that Mr. Sanchez deviated in any way from Archer's standard procedure of using a few drops of dishwashing liquid in a bucket of water to clean the windows, and it would make no sense whatsoever to even surmise that he added a hydrocarbon to his bucket because he's washing windows. You wouldn't add an oily substance to a bucket of water to wash windows because it would just smear. But I don't even think that Mr. Schmidt said that he questioned what was in the bucket. I think his testimony on the record was that because of the placement of the substance, he had no other basis for concluding that there was anything else other than what Archer did that was the source of the substance. And the other evidence on the record would strongly, and I would say without contradiction, would indicate that Archer did not deposit a hydrocarbon substance in front of those windows 45 days before the accident. And if Archer didn't do it, the plaintiff doesn't have a theory and doesn't have any evidence as to what the stuff is, when it got there, and who put it there. And since they can't establish when it was there, they can't establish constructive notice on the part of Chicago Title. Thank you very much, Your Honors. Thank you. I rebuttal Mr. Scott. I found what I was looking for during my pregnant pause when I was last up here. You said rebuttal to what we just argued? Yes, rebuttal to what he just said. Okay, thank you. No problem. In the case of Racky v. Belfour, the first district last year, 2017, said, if a premises liability plaintiff is relying on proof of constructive notice, he or she must establish that the dangerous condition existed for a sufficient time, like you said, or was so conspicuous that the defendant should have discovered the condition through the exercise of reasonable care. Or, not and. The plaintiff, in order to prevail in this case under the Racky opinion, does not have to show any evidence of a period of time that it was out there. If that condition is so conspicuous that anybody would have seen it and said, hey, there's a problem here, plaintiff has shown what it needs to show to establish constructive notice. You mean you don't have to show what it was based on? Well, you're short. The context. Ask the CT&T, ask the Chicago Title and Trust, where it came from goes out the window. Who cares? The fact of the matter is, as to the business owner, they're liable for a foreign substance that's on their premises if it is so obvious that they should have discovered it through the exercise of ordinary care. It's a matter of what the substance is, you're saying. Exactly. I don't, I don't, it can be Vaseline for all we care. What say you to his argument that his expert, whose evidence was not stricken, showed that two years later the photographs look the same? No. Honestly, all I have to rebut that is Greg Mamarchuk's testimony and the only testimony that the pictures he took truly and accurately represented those premises on that day. Okay. That's my, that's not my point. Yeah. There's nothing else in the record to rebut that. No, there isn't. There is something in the record, and Schmidt did testify, that the stuff in the photographs is not a product of the finish of the concrete. That's in there. I guarantee you that's in there, and that's rebutted, and that's a disagreement between the two experts. Given that, I stand on our arguments with regard to our true windows. With regard to constructive notice, again, I don't think it matters what it was. It doesn't matter how long it was there, because under the Racky opinion, if it was so conspicuous, and under the photographs we show, and there's at least a question of fact as to how conspicuous it was, that maintenance man should have known it and should have cleaned it up when he was out there those 25 times prior to this incident. In your complaint, you alleged that the substance did come from our true windows. I did. That's when we thought it was. You did not make a complaint to allege that it was some unknown substance, correct? Agreed. And after the testimony of the registered witness, you certainly had an opportunity to amend the complaint, correct? Well, we always have an opportunity through trial to amend the complaint, Judge. Correct. The case went to summary judgment on the pleadings. The case went to summary judgment on the pleadings, on the depositions, on the photographs, on everything. Not the pleadings. I mean, there's no sworn testimony in the pleadings. If this judge would have agreed a summary judgment just based on my complaint, I don't think that would have been appropriate. No, I'm talking about everything that was before the court, including your complaint, which was not amended to allege some foreign substance. Nobody ever referenced the complaint in moving for summary judgment before the trial court, in any argument before the summary judgment in the trial court, in any brief. That was never raised until you just did. But the point is that your entire argument, the depositions, everything that was before the court, all was tied to our true windows. And no, because constructive notice, she ruled on that. I mean, in the order of that granted summary judgment, she specifically ruled, there's no question of material fact, that Chicago Title and Trust did not have constructive notice of this condition. Had she ruled the other way, I don't think we would be here. Thank you, Your Honor. I have one more question. Counsel, is the bottom line, then, is you're saying with respect to Chicago Title and Trust, it's a question of fact whether whatever that stuff is on the sidewalk was conspicuous? Correct. Under the record, sir. All right. Thank you, Mr. Scott. Thank you. All right. I would like to thank all counsel this morning for the quality of their arguments. The matter will, of course, be taken under advisement and written decision. We'll meet you in the new court. We'll stand at brief recess to prepare for the next case.